## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| ACOUSTI ENGINEERING COMPANY OF FLORIDA, | § § § | |
| Plaintiff, | § § | |
| | § | CIVIL ACTION NO. _____ |
| v. | § | |
| | § | TRIAL DEMANDED |
| CARLOS VELASCO, MARBEL BAUTISTA, JOEL PALMER, BRYAN GARNER, MARCOS RIBEIRO, VPG BUILDERS LLC, and V3R CONSTRUCTION LLC, | § § § § § § | |
| Defendants. | | |

### PLAINTIFF ACOUSTI ENGINEERING COMPANY OF FLORIDA'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR TRIAL

Plaintiff ACOUSTI ENGINEERING COMPANY OF FLORIDA ("Acousti" or the "Company") hereby files this Complaint for Injunctive Relief and Damages against Defendants CARLOS VELASCO, MARBEL BAUTISTA, JOEL PALMER, BRYAN GARNER, MARCOS RIBEIRO, in their individual capacities and as agents, VPG BUILDERS LLC ("VPG"), and V3R CONSTRUCTION LLC ("V3R") (collectively "Defendants"), and shows the Court as follows:

### PRELIMINARY STATEMENT

1.    This case involves Carlos Velasco, a former Executive Officer, who worked for Acousti for well over 20 years.  He was ultimately promoted to Vice

1

President of Construction. During his employment, Velasco had opportunities to learn of Acousti's confidential information and trade secrets. During the course of his employment, Velasco had contact with Acousti's customers and suppliers, and had access to Acousti's confidential information, trade secrets, and plans pricing, bids, and other private information. He also executed certain restrictive agreements with Acousti, including a non-compete and a non-solicitation agreement, in which he promised not to compete with Acousti or solicit its employees, customers, or suppliers after his employment.

2.     Acousti recently discovered that during the course of his employment, Velasco set up a separate corporation to compete with Acousti, solicited its customers and used its confidential information and trade secrets for the benefit of his secret corporation and his own pecuniary good. Moreover, Defendant Velasco and Defendant Bautista, Defendant Palmer, Defendant Garner, Defendant Ribeiro, Defendant VPG and Defendant V3R ("Other Defendants") conspired to take Acousti's physical and tangible assets for purposes of setting up their secret company and committing corporate espionage. Defendant VPG is owned and/or operated by Defendant Bautista, Velasco's wife, and Defendant Palmer and Defendant Garner, two former project managers from Acousti's customer, Summit Construction Management Group, LLC. Defendant Bautista, Defendant Palmer, Defendant Garner, Defendant Ribeiro, Defendant VPG and Defendant V3R,

2

knowingly tortiously interfered with Acousti's contracts with Velasco and used the information gained from Velasco to interfere with Acousti's business relationships and customer relationships and thereby irreparably damaging Acousti. The Defendants' mission was to take advantage of Acousti's confidential information, trade secrets and business opportunities to enrich themselves at Acousti's expense.

## **PARTIES**

3.      Plaintiff Acousti is an industry leader in interior building finishes and specialty construction.

4.      Acousti markets its products and services to encompass fully integrated solutions for interior systems, as well as specialty exterior applications, including but not limited to, acoustical ceilings, computer and access floors, drywall systems and insulation, flooring, sound control systems, and substrate preparation.

5.      Acousti is a for-profit corporation organized under the laws of the State of Florida, with its principal place of business at 4656 S.W. 34th Street, Orlando, Florida 32811.

6.      Defendant Carlos Velasco is a former Vice President of Construction for Acousti who resides in Orlando, Florida.

7.      Defendant Marbel Bautista who resides in Orlando, Florida, is an authorized member of VPG Builders LLC and the managing member of V3R Construction LLC.

1095455080\11\AMERICAS

8.      Defendant Joel Palmer who resides in Maitland, Florida is the managing member of VPG Builders LLC.

9.      Defendant Palmer was also Project Manager with Summit Construction Management Group, LLC ("Summit Construction").

10.     Defendant Bryan Garner who resides in Merritt Island, Florida, is an authorized member of VPG Builders LLC.

11.     Defendant Bryan Garner was also Project Manager with Summit Construction.

12.     Defendant VPG Builders LLC is a limited liability corporation organized under the laws of the State of Florida, with its principal place of business at 1273 Wellington Ter., Maitland, Florida 32751.

13.     Defendant VPG's registered agent is Mtello Business Services, Inc., 1801 E. Colonial Drive, #206, Orlando, Florida 32803.

14.     Defendant VPG is a general contractor primarily engaged in construction work.

15.     Defendant V3R Construction LLC is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 2334 Roat Drive, Orlando, Florida, 32835.

16.     Defendant V3R's registered agent is Mtello Business Services, Inc., 1801 E. Colonial Drive, #206, Orlando, Florida 32803.

1095455080\11\AMERICAS

17.    Defendant V3R is a general contractor primarily engaged in construction work.

18.    Defendant Marcos Ribeiro who resides in Doral, Florida, is an authorized member of V3R Construction LLC.

19.    Defendant Ribeiro is also the Executive Vice President of Rosen Materials, LLC.

## JURISDICTION AND VENUE

20.    Pursuant to 28 U.S.C. §§ 1331 and 1367, this Court has subject matter jurisdiction over this action because this case arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et. seq.* and otherwise includes claims so related as to form part of the same case or controversy.

21.    Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this matter, as a substantial part of the events giving rise to this action took place in the Middle District of Florida.

## FACTS

### *Defendant Carlos Velasco's Employment Agreement*

22.    Velasco entered into a binding Employment and Non-Compete Agreement ("Agreement") on May 5, 2003.

23.    On September 26, 2020, Defendant Velasco executed a Shareholder Support Agreement, becoming a shareholder in Acousti following the sale of the

company to AECOF Merger Sub Inc.

24.    On October 28, 2020, Defendant Velasco also executed an Amendment to Employment and Non-Compete Agreement ("Amended Agreement") which superseded all previous restrictive covenants.

25.    In his Agreement, Defendant Velasco acknowledged that he "will have access to confidential information, trade secrets, customer information and other confidential information utilized by [Acousti]" and "that such information is confidential, that [Acousti] desires for it to remain confidential, and that Employer has a legitimate business interest in keeping such information from being used against it by its competition."

26.    Defendant Velasco stipulated and agreed that Acousti's legitimate business interests include, but are not limited to: (1) protecting Acousti's trade secrets, (2) protecting the confidentiality of Acousti's "methods of doing business, price lists and pricing, quotations, estimating procedures and practices, job costing methods, sources for material supplies, its material costs, its labor costs and labor burden costs, and other information which is used by the Employer in bidding and pricing work, and preventing such information from being used by its competitors;" (3) protecting the identity of Acousti's customers, preserving the relationships of trust and confidence with Acousti's customers, and keeping confidential the particular needs of Acousti's customers; (4) protecting Acousti's other confidential

1095455080\11\AMERICAS

business and professional information, (5) protecting substantial relationships with prospective customers, and (6) protecting Acousti's customer and client goodwill associated with Acousti's business, reputation, and training.

27.    Defendant Velasco's Amended Agreement requires Velasco "keep strictly confidential and not disclose to any person not employed by [Acousti] any Confidential Information" and "not use for [Velasco] or for any other person or entity any Confidential Information."

28.    The Amended Agreement defines "Confidential Information" as "all confidential, proprietary or business information related to [Acousti's] business that is furnished to, obtained by, or created by [Velasco] during [Velasco's] employment with [Acousti] and which could be used to harm or compete against [Acousti]."

29.    The Amended Agreement further specifies that Acousti's confidential information includes, but is not limited to, information relating to "(a) [Acousti's] formulae and processes used to calculate and negotiate prices to be charged to customers; (b) employee performance metrics and other personnel information; (c) [Acousti's] customers, including customer lists, customer preferences, rates, quotations, contact information and billing histories; (d) [Acousti's] finances, including financial statements, balance sheets, sales data, forecasts, and cost analyses; (e) [Acousti's] plans and projections for business opportunities for new or developing business, including marketing concepts and business plans; (f)

7

[Acousti's] research and development activities, technical data, computer files, and software; and (g) [Acousti's] operating methods, estimating procedures and practices, job costing methods, sources for material supplies, material costs, labor costs and labor burden costs, business processes and techniques, services, products, prices, costs, service performance, and operating results."

30.    Defendant Velasco's Amended Agreement also prohibits Velasco from engaging in Competitive Activity within the State of Florida or assisting anyone else in engaging in Competitive Activity within the State of Florida.

31.    Prohibited "Competitive Activity" is defined as "competing against [Acousti] by performing the same or substantially similar work as [Velasco] performed on behalf of [Acousti] at any time during the last twelve (12) months of employment with [Acousti], in any executive or upper management capacity, and/or in any capacity in which he would use, reference or disclose Confidential Information in [the State of Florida] for an entity engaged in [(a) the sale and installation of interiors in connection with construction and remodeling projects, including but not limited to, acoustical ceilings, walls, drywall, partitions, overhead doors and floor coverings; and (b) the business engaged in by [Acousti] as of [Velasco's] last day of employment with the [Acousti].]"

32.    The non-compete provision of Defendant Velasco's Amended Agreement applies for twelve (12) months following Defendant Velasco's last day

of employment with Acousti.

33.     Defendant Velasco's Amended Agreement also contains a customer non-solicitation agreement in which Defendant Velasco agrees, for a period of twelve (12) months, not to "directly or indirectly: (a) solicit, encourage, cause or attempt to cause any Restricted Customer [ ] to purchase any services or products from any business other than [Acousti] that are competitive with or a substitute for the services or products offered by [Acousti], (b) sell or provide any services or products to any Restricted Customer that are competitive with or a substitute for [Acousti]'s services or products; (c) solicit, encourage, cause or attempt to cause any supplier of goods or services to [Acousti] not to do business with or to reduce any part of its business with [Acousti]; or (d) make any disparaging remarks about [Acousti] or its business, services, affiliates, officers, managers, directors or management employees, whether in writing, verbally, or on any online forum."

34.     The Amended Agreement defines "Restricted Customer" as "(a) any customer of [Acousti] with whom [Velasco] had contact or communications at any time during [Velasco]'s last twelve (12) months as a [Acousti] employee; (b) any customer of [Acousti] for whom Employee supervised [Acousti]'s account or dealings at any time during [Velasco]'s last twelve (12) months as a [Acousti] employee; and/or (c) any customer of [Acousti] about whom Employee obtained any Confidential Information during [Velasco]'s last twelve (12) months as a [Acousti]

9

employee."

35.    Defendant Velasco acknowledges that "breach of [his] obligations hereunder will result in irreparable harm and continuing damages to [Acousti], some of which damages will not be provable with reasonable certainty, and that [Acousti] will have no adequate remedy at law."

## *Defendant Carlos Velasco's Employment with Acousti Engineering Company*

36.    Defendant Velasco began working for Acousti as a laborer and worked his way through the ranks to various positions such as Project Manager, Orlando Branch Manager, Regional Manager for the Jacksonville and Orlando Branch, and Vice President of Construction.

37.    As a result of his executive position with Acousti, Defendant Velasco had contact with Acousti's customers and suppliers, and access to Acousti's plans, pricing, margins, methods, and strategies.

38.    In 2022 Defendant Velasco also assumed the duties as interim Branch Manager in Jacksonville, Florida in addition to his duties as Regional Manager and later became the Vice President of Construction.

39.    Defendant Velasco had complete control over the Jacksonville branch even serving as a Project Manager on its large projects.

40.    Defendant Velasco micro-managed the entire Jacksonville branch including preparing estimates, ordering material, and working directly with

contracts.

41.     Plaintiff recently discovered that Defendant Velasco had handpicked vendors and subcontractors and many of whom were close friends.

42.     Defendant Velasco was rubberstamping invoices instead of reviewing them and upon information and belief, had side deals with his hand chosen vendors.

43.     For example, Defendant Velasco frequently insisted on using Rosen Materials, LLC for projects in Orlando and Jacksonville.

44.     LA Construction is a subcontractor that worked out of Orlando, but Defendant Velasco insisted on also using them for Jacksonville projects. Upon information and belief, Velasco has a close relationship with its owner.

45.     Several projects with LA Construction were over-billed for labor which caused significant losses for Acousti.

46.     The Agreement between LA Construction and Acousti directed that Acousti would pay LA Construction an hourly rate for each worker assigned to Acousti's projects.

47.     Acousti has now learned that LA Construction was overstaffing projects resulting in laborers on the jobsite with no work to do.

48.     Consequently, one project with a budget of $1,000,000 for labor has already accrued $1,200,000 in labor costs and is only 60% complete.

49.     Acousti could face additional monetary damages from its customers if

1095455080\11\AMERICAS

this job is not completed on time and within budget.

50.    Another one of Velasco's project's losses were close to $3,000,000.

51.    On January 26, 2023, Acousti terminated Defendant Velasco's employment for cause due to his breach of his fiduciary duty.

52.    Specifically, Acousti learned that Defendant Velasco, along with the Other Defendants, set up a competing business and used Acousti's information to underbid Acousti's prices. Moreover, Defendant Velasco used Acousti's trade secrets, customer information, and confidential information in conducting his secret company affairs.

53.    In Defendant Velasco's termination letter, Acousti demanded return of all Acousti property and information.

54.    To date, Defendant Velasco has not returned any confidential or proprietary Acousti property or information but rather has retained it for his own financial gain.

55.    Moreover, after his termination, on February 7, 2023, Defendant Velasco logged into Acousti's Orlando Magic account and illegally transferred four tickets to his son.

### *Defendant Carlos Velasco's Competing Business Ventures*

56.    While working for Acousti, Defendant Velasco set up a competing company to compete with Acousti.

12

57.    Defendant Velasco is married to Defendant Bautista and Bautista is an authorized member of VPG Builders LLC ("VPG") and the managing member of V3R Construction LLC ("V3R").

58.    Both Defendant VPG and Defendant V3R are general contractors, primarily engaged in the construction industry.

59.    Acousti learned that Defendant VPG submitted competing bids for jobs that Acousti bid on.  In many respects, the bidding forms were nearly identical, except Defendant VPG's price was lower than Acousti.

60.    Specifically, on September 30, 2022, Acousti submitted a bid to Summit Construction for the "RCSA Bayard" project.

61.    Defendant Velasco signed Acousti's bid for the "RCSA Bayard" project.

62.    On October 24, 2022, Defendant VPG submitted a proposal for the "RCSA Bayard" project that plagiarized information from Acousti's proposal.

63.    Defendant VPG's proposal, however, was $42,256.00 less than Acousti's.

64.    On September 30, 2022, Acousti also submitted a bid to Summit Construction for the "Estero Classical Academy" project.

65.    Defendant Velasco signed Acousti's bid for the "Estero Classical Academy" project.

1095455080\11\AMERICAS

66.    On October 24, 2022, Defendant VPG submitted a proposal for the "Estero Classical Academy" project that plagiarized information from Acousti's proposal.

67.    Bids for the "RCSA Bayard" project were sent to the attention of Defendant Palmer in his capacity as Project Manager with Summit Construction.

68.    Defendant Palmer is the managing member of Defendant VPG.

69.    Bids for the "Estero Classical Academy" project were sent to the attention of Defendant Garner in his capacity as an employee with Summit Construction.

70.    Defendant Garner is an authorized member of Defendant VPG.

## COUNT I

## MISAPPROPRIATION OF TRADE SECRETS: FEDERAL DEFEND TRADE SECRETS ACT
### (All Defendants)

71.    Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

72.    During his employment with Acousti, Velasco had access to and did access Acousti's confidential, proprietary, trade secret information, including, but not limited to, customer lists and information, supplier lists and information, pricing information, project development information, margins, and other trade secrets.

73.    Acousti exerts substantial efforts to protect the confidentiality of its

14

information. Such efforts include: (1) requiring contracts containing restrictive covenants, (2) including policies in the employee handbook and code of ethics that forbids employees from misappropriating Acousti's confidential, proprietary, and trade secret information; (3) requiring employees to execute acknowledgements of the policies contained in the employee handbook; (4) instructing employees to avoid conflicts of interest; (5) conducting on-the-job security training and utilizing occupational security best practices; (6) implementing electronic security measures, such as use of passwords, security time-outs on computers, and separation of confidential information; and (7) employing physical security measures, such as placing locks on offices, doors, and file cabinets.

74. Acousti derives economic value from such secrecy by depriving competitors like Defendant VPG and Defendant V3R of opportunities to use Acousti's trade secrets to gain a competitive advantage.

75. During his employment with Acousti, Defendant Velasco misappropriated Acousti's trade secrets within the meaning of 18 U.S.C. § 1839(5) by using the trade secrets in active competition with Acousti.

76. Additionally, the Other Defendants obtained Acousti's trade secrets while Defendant Velasco was still employed with the express intent to gain insider knowledge to better compete with Acousti.

77. Defendant Velasco's misappropriation of Acousti's trade secrets for the

1095455080\11\AMERICAS

benefit of Defendant VPG entitles Acousti to immediate injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3).

78.     At all material times, Defendant Velasco and the Other Defendants have acted willfully, maliciously, and in bad faith.

79.     As a result of Defendant Velasco's and the Other Defendants' conduct, Acousti will suffer irreparable harm.

**COUNT II**

**MISAPPROPRIATION OF TRADE SECRETS AND VIOLATION OF
FLORIDA'S UNIFORM TRADE SECRETS ACT**
**(All Defendants)**

80.     Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

81.     As a result of his employment and positions of trust within Acousti, Defendant Velasco was given access to Acousti's trade secrets including confidential customer lists, cost price lists, profit margin analysis, and sales and strategic plans for Acousti's customers. All of these materials are unique to Acousti and not commonly known or available to the public.

82.     Acousti's compilations of bidding and pricing information, plans, costs, customer lists, and other trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure

16

or use. Acousti takes steps that are reasonable under the circumstances to maintain the secrecy of its trade secret information.

83.     Defendant Velasco misappropriated Acousti's trade secrets for himself to gain an unearned, unfair, and unjust advantage in operating a competing business.

84.     The Other Defendants explicitly or implicitly took part in, encouraged, had knowledge of, and/or benefited from Defendant Velasco's, misappropriation of Acousti's trade secrets.

85.     Acousti's above-described information and compilations constitute trade secrets that are protected by Florida's Uniform Trade Secrets Act, §§ 688.001-688.009 ("FUTSA"). The FUTSA expressly authorizes this Court to enjoin actual or threatened misappropriation of trade secret information.

86.     Defendant Velasco has an affirmative duty not to misuse or otherwise misappropriate Acousti's trade secret information where, as here, they know or have reason to know that such information is a trade secret.

87.     Defendant Velasco acquired Acousti's trade secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use.

88.     Upon information and belief, Defendant Velasco and the Other Defendants misappropriated and used, disclosed, and/or threatened to use or disclose Acousti's trade secrets for the benefit of themselves and to the substantial and irreparable detriment of Acousti.

17

89.     The Other Defendants knew or had reason to know that Acousti's trade secrets were acquired by Defendant Velasco under circumstances giving rise to a duty to Acousti to maintain their secrecy.

90.     Defendant Velasco and the Other Defendants knew or had reason to know that Acousti's trade secrets had been used, had been disclosed, and/or would be used or disclosed by Defendant Velasco in efforts to compete directly with Acousti's business.

91.     Defendant Velasco and the Other Defendants knew that they did not have Acousti's consent, express or implied, to appropriate or disclose Acousti's trade secrets for their own use or benefit or for the use or benefit of any other entity.

92.     The Defendants' use or disclosure or threatened use or disclosure of Acousti's trade secrets violates FUTSA.

93.     At all material times, Defendant Velasco and the Other Defendants have acted willfully and maliciously.

94.     The acts and threatened acts of misappropriation or misuse by Defendant Velasco, and the Other Defendants have caused and will continue to cause substantial damage to Acousti.

95.     Disclosure or use of Acousti's trade secrets will result in immediate and irreparable harm to Acousti for which there is no adequate remedy at law.

## COUNT III

## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (All Defendants)

96.    Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

97.    Through its considerable expenditures and energies, Acousti has developed and protected confidential and proprietary information and trade secrets and have maintained and secured the same.

98.    Defendants have engaged in a pattern of deceptive and unfair trade practices against Acousti in the following ways:

    a.    Upon information and belief, Defendant Velasco improperly removed data from Acousti's computers;

    b.    Defendant Velasco, and the Other Defendants used that data to directly compete with Acousti;

    c.    Defendant Velasco improperly disseminated Acousti's trade secrets and other proprietary business information for his and the Other Defendants' personal gain; and

    d.    Defendant Velasco, and the Other Defendants, as alleged above, explicitly, or implicitly took part in, encouraged, had knowledge of, and/or benefited from Defendant Velasco's unfair and deceptive trade

19

practices.

99.    The Defendants' acts constitute unlawful and unfair methods of competition, unconscionable acts, or practices, and unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes 501.201, *et seq*.

100.    Defendants' unfair competition with Acousti has caused Acousti to suffer damages, including lost profits through loss of existing and anticipated projects, loss of goodwill, and reduced viability in the marketplace.

## COUNT IV

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
### (Defendant Velasco)

101.    Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

102.    On information and belief, Defendant Velasco knowingly and/or with intent to defraud Acousti, accessed Acousti's computer system and exceeded authorized use to obtain information from a computer used in interstate commerce.

103.    Acousti's computers contain proprietary information and are used to conduct Acousti's business throughout the country.   For example, Acousti's computers help prepare project bids, secure contracts, and order parts and equipment.

1095455080\11\AMERICAS

104. The Other Defendants, as alleged above, explicitly, or implicitly took part in, encouraged, and/or benefited from Defendant Velasco's unauthorized use of Acousti's computer systems.

105. Defendant Velasco and the Other Defendants furthered their intended wrongdoing by improperly obtaining and utilizing information from Acousti's computer system. The information Defendants obtained from the above-alleged acts and conduct included valuable information relating to Acousti's trade secrets and confidential information.

106. Defendants' acts and conduct have impaired the integrity and availability of Acousti's data, programs, systems, and/or information.

107. Defendants damaged Acousti, and it will suffer great and irreparable harm and damage far more than $10,000. Acousti's damages include diagnostic examination of its computer system to ascertain the full extent of compromised and impaired information, as well as losses for responding to the above-alleged acts and conduct by Defendants, conducting a damage and lost revenue assessment, and other consequential damages incurred because of the impairment of Acousti's data, programs, systems, and/or information. Acousti lacks an adequate remedy at law and, unless enjoined by this Court, Defendants will continue to cause irreparable injury and damage to Acousti as a result of the wrongful acts complained of herein.

108. As a result of the Defendants' conduct, Acousti is suffering and will

1095455080\11\AMERICAS

continue to suffer immediate and irreparable harm.

## COUNT V

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (All Defendants)

109.   Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

110.   During Defendant Velasco's employment with Acousti, Defendant Velasco improperly obtained Acousti's trade secrets and confidential information, shared the information with the Other Defendants, who in turn used the information to directly compete with Acousti, thereby tortiously interfering with Acousti's business relationships with its customers.

111.   Defendants knew Acousti customers had an existing business relationship and/or contracts with Acousti and willfully used Acousti's confidential information and trade secrets to wrongfully compete with Acousti.

112.   Defendants' intentional interference with the existing business relationships and contracts between Acousti and those customers was unjustified.

113.   Defendants explicitly or implicitly took part in, encouraged, and/or benefited from Defendant Velasco's breach of his fiduciary duties to tortious interference with Acousti's business relationships.

114.   Consequently, Acousti seeks punitive damages for this Count, pursuant to Fla. Stat. § 768.72.

115.   Acousti has suffered and will continue to suffer immediate and irreparable damage as a result of Defendants' conduct.

## COUNT VI

### CONSPIRACY
**(All Defendants)**

116.   Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

117.   Defendant Velasco and the Other Defendants conspired to tortiously interfere with Acousti's prospective business relations, to misappropriate Acousti's trade secrets, and to utilize and obtain information through unauthorized access to Acousti's computer system.

118.   Defendant Velasco was in possession of Acousti's confidential and proprietary information. Defendant Velasco used and disclosed Acousti's confidential and proprietary information for the benefit of the Other Defendants to wrongfully compete with Acousti.

119.   Defendants' willful and malicious acts and wrongful conduct prevented or will prevent prospective contracts between Acousti and its clients and vendors from occurring, proximately causing damage to Acousti, not limited to a loss of revenue.

## COUNT VII

## UNFAIR COMPETITION
### (All Defendants)

120.   Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

121.   Acousti's confidential, proprietary and trade secret information, as described herein, was created by Acousti through extensive time, labor, skill, and money.

122.   Upon information and belief, Defendant Velasco obtained Acousti's confidential, proprietary and trade secret information, as described herein, and wrongfully used the information, in conjunction with the Other Defendants to actively and directly compete with Acousti.

123.   Specifically, Defendant VPG utilized Acousti's confidential, proprietary and trade secret information to submit bids to Summit Construction (aided by Defendant Palmer and Defendant Garner's insider knowledge and access to Summit Construction).

124.   Defendant's wrongful use and acquisition of Acousti's confidential, proprietary and trade secret information, has provided Defendants a special advantage and a free ride because Defendants are burdened with little or none of the expense incurred by Acousti in developing its confidential, proprietary and trade secret information.

125.   As a result of Defendants' unfair competition, Acousti has suffered substantial commercial damage and harm for which it is entitled to collect damages, including punitive damages.

126.   Defendants' conduct was intentional, willful, and outrageous, and was undertaken with indifference to the rights of Acousti.

127.   In addition, Acousti has suffered and will continue to suffer harm— including the loss of customers, loss of potential customers, loss of goodwill, and the unauthorized disclosure of its confidential, proprietary, and confidential trade secret information for which Acousti is entitled to preliminary and permanent injunctive relief.

## COUNT VIII

## TORTIOUS INTERFERENCE WITH VELASCO'S EMPLOYMENT CONTRACT
### (The Other Defendants)

128.   Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

129.   Defendant Velasco had a binding contract with Acousti governing his conduct during his employment and thereafter.

130.   Defendant Velasco's contract contains restrictive covenants including but not limited to, confidentiality and non-compete provisions.

131.   Specifically, Defendant Velasco acknowledged he had access to

1095455080\11\AMERICAS

confidential information, trade secrets, customer information and other confidential information utilized by Acousti, and that such information was confidential and shall remain confidential.

132.  Defendant Velasco agreed to "keep strictly confidential and not disclose to any person not employed by [Acousti] any Confidential Information" and "not use for [Velasco] or for any other person or entity any Confidential Information."

133.  Defendant Velasco's contract also prohibits him from competing against Acousti within the State of Florida or assisting anyone else in engaging in competing against Acousti within the State of Florida.

134.  Defendant Velasco breached his confidentiality, non-competition, and non-solicitation provisions.

135.  The Other Defendants above, explicitly, or implicitly took part in, encouraged, and/or benefited from Defendant Velasco's unlawful breach of his employment contract with Acousti, with the intent to actively and directly compete with Acousti and harm its business relationships, opportunities and goodwill.

136.  As a result of the Other Defendants' interference with Defendant Velasco's contract with Acousti, Acousti has already been damaged and expects further damages.

137.  The Other Defendants' intentional and unlawful interference with the

1095455080\11\AMERICAS

terms of Defendant Velasco's employment with Acousti has deprived Acousti of the economic benefit of its business relations with Defendant Velasco.

138.    The wrongful conduct of the Other Defendants was knowing, willful, intentional, malicious, reckless, or grossly negligent.

139.    Acousti has suffered and will continue to suffer immediate and irreparable harm as a result of the conduct of the Other Defendants.

<u>COUNT IX</u>

<u>BREACH OF EMPLOYEE DUTY OF LOYALTY</u>
(Defendant Velasco)

140.    Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

141.    When Defendant Velasco was an Acousti employee, he owed Acousti a duty of loyalty, good faith, and trust, which included, but was not limited to, a duty not to engage in disloyal acts in anticipation of future competition, such as misusing confidential information acquired during their employment or soliciting customers and other employees prior to the end of his employment with Acousti.

142.    Defendant Velasco breached his duty of loyalty to Acousti by, among other things, engaging in the following activities while still employed with Acousti:

    a.    Performing work or engaging in other activities to benefit himself personally and the Other Defendants; and

    b.    Using, disclosing, and/or misappropriating Acousti's protected

27

confidential and trade secret information for the benefit of himself and the Other Defendants.

143.   As a result of Defendant Velasco's willful breach of his duty of loyalty, Acousti has suffered and will continue to suffer damages in the forms of wages and benefits paid to, but not earned by, Defendant Velasco; lost business; lost revenue; lost goodwill; lost employees; lost customers; compensatory damages; and/or other immeasurable, unquantifiable, and irreparable injuries.

144.   Consequently, Acousti seeks punitive damages, pursuant to Fla. Stat. § 768.72.

## COUNT X

## BREACH OF CONTRACT - NON-COMPETE AGREEMENT
### (Defendant Velasco)

145.   Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

146.   Pursuant to the Amended Agreement entered between Acousti and Defendant Velasco, Defendant Velasco was prohibited from competing with Acousti during and for one year following his termination of employment with Acousti.

147.   The non-compete provision of the Amended Agreement is valid and enforceable, pursuant to Fla. Stat. § 542.335.

148.   The non-compete provision of the Amended Agreement is reasonable with respect to its duration, scope, and the line of business covered by the

restriction.

149.    The non-compete provision is reasonably calculated to protect Acousti's legitimate business interests which include, but are not limited to, Acousti's trade secrets, confidential business information, and its substantial relationships with its existing and prospective customers.

150.    During his employment with Acousti and following his termination of employment with Acousti, Defendant Velasco has engaged in various forms of competition with Acousti that are prohibited under the non-compete provision of the Amended Agreement.

151.    Defendant Velasco's wrongful competition with Acousti constitutes a breach of the Amended Agreement.

152.    Defendant Velasco acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Acousti, some of which, Acousti will have no adequate remedy at law.

153.    As a result of the breach of the Amended Agreement, Acousti has suffered damages in an amount to be determined at trial.

<u>**COUNT XI**</u>

<u>**BREACH OF CONTRACT - CUSTOMER NON-SOLICITATION AGREEMENT**</u>
**(Defendant Velasco)**

154.    Acousti repeats and realleges paragraphs 1 through 70 above as if fully

29

stated herein.

155.    Pursuant to the Amended Agreement entered between Acousti and Defendant Velasco, Defendant Velasco was prohibited from soliciting, encouraging, causing or attempting to cause any Restricted Customer to purchase any services or products from any business other than Acousti that are competitive to Acousti.

156.    Defendant Summit Construction is an existing Acousti customer.

157.    While employed by Acousti, Defendant Velasco, in conjunction with Other Defendants, solicited, encouraged, caused, or attempted to cause Summit Construction to purchase services of their secret company.

158.    Defendant VPG is competitive to Acousti.

159.    The customer non-solicitation provision of the Amended Agreement applies for a period of twelve (12) months following Defendant Velasco's termination.

160.    The customer non-solicitation provision of the Amended Agreement is valid and enforceable, pursuant to Fla. Stat. § 542.335.

161.    The customer non-solicitation provision of the Amended Agreement is reasonable with respect to its duration, scope, and the line of business covered by the restriction.

162.    The customer non-solicitation provision is reasonably calculated to protect Acousti's legitimate business interests which include, but are not limited to,

Acousti's trade secrets, confidential business information, and its substantial relationships with its existing and prospective customers.

163. During his employment with Acousti and following his termination of employment with Acousti, Defendant Velasco has engaged in various forms of customer solicitation that are prohibited under the customer non-solicitation provision of the Amended Agreement.

164. Defendant Velasco's wrongful competition with Acousti constitutes a breach of the Amended Agreement.

165. Defendant Velasco acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Acousti, some of which, Acousti will have no adequate remedy at law.

166. As a result of the breach of the Amended Agreement, Acousti has suffered damages in an amount to be determined at trial.

## COUNT XII

## BREACH OF CONTRACT - DISCLOSURE OF CONFIDENTIAL INFORMATION
### (Defendant Velasco)

167. Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

168. Pursuant to the Amended Agreement, Defendant Velasco was prohibited from disclosing any Acousti Confidential Information to anyone other

31

than Acousti except for the purposes of carrying out his duties within the scope of his employment with Acousti.

169.    Pursuant to the Amended Agreement, Defendant Velasco was also prohibited from using the Confidential Information in furtherance of his personal business or the business of anyone else in competition with the Company.

170.    In violation of the Amended Agreement, Velasco disclosed Acousti's confidential information to the Other Defendants.

171.    In violation of the Agreement, Defendant Velasco utilized Acousti's Confidential Information in furtherance of his own personal business and the business of the Other Defendants.

172.    Defendant Velasco's disclosure and use of Acousti's Confidential Information in violation of the Amended Agreement constitutes a breach of the Amended Agreement.

173.    Defendant Velasco acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Acousti, some of which, Acousti will have no adequate remedy at law.

174.    As a result of this breach of the Amended Agreement, Acousti has suffered damages in an amount to be determined at trial.

32

## COUNT XIII

## BREACH OF CONTRACT - FAILURE TO RETURN ACOUSTI PROPERTY
### (Defendant Velasco)

175.   Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

176.   Pursuant to the Amended Agreement, Defendant Carlos Velasco was obligated to promptly return all documents and tangible items belonging to Acousti, including all Confidential Information or copies of such information in Defendant Velasco's possession, custody, or control.

177.   Defendant Velasco has retained possession of various Acousti documents, in paper and electronic form, which contain Acousti's confidential information, as well as Acousti's property.

178.   Velasco's failure to return these materials and items to Acousti constitutes a breach of the Amended Agreement.

179.   Defendant Velasco acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Acousti, some of which, Acousti will have no adequate remedy at law.

180.   As a result of this breach of the Amended Agreement, Acousti has suffered damages in an amount to be determined at trial.

1095455080\11\AMERICAS

## COUNT XIV

## FRAUD
**(Defendant Velasco)**

181.   Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

182.   Defendant Velasco intentionally defrauded Acousti out of labor, materials, and profit for his own financial and personal gain.

183.   Defendant Velasco knowingly approved subcontractor invoices for excess and unnecessary labor at Acousti's expense.

184.   Defendant Velasco knowingly approved and/or ordered excess and unnecessary materials at Acousti's expense.

185.   Acousti relied on Defendant Velasco as a leader and shareholder to act in Acousti's best interests.

186.   Almost all of Defendant Velasco's projects in Acousti's Jacksonville project are losing or have lost Acousti more than $3,000,000.

187.   Acousti faces continued losses and potentially other monetary damages on current projects as a result of Defendant Velasco's malicious conduct.

188.   Upon information and belief, Defendant Velasco benefited financially and personally as a result of his conduct.

1095455080\11\AMERICAS

## COUNT XV

## CIVIL THEFT
### (Defendant Velasco)

189.  Acousti repeats and realleges paragraphs 1 through 70 above as if fully stated herein.

190.  Defendant Velasco with felonious intent, knowingly obtained or used, or endeavored to use Acousti's trade secrets, including confidential information, with the intent to temporarily or permanently deprive Acousti of the right to such property, or the benefits of such property and appropriate such property to their own use, or the use of other persons or entities not entitled to the use of the property within the meaning of Fla. Stat. § 812.014.

191.  Upon information and belief, Defendant Velasco with felonious intent, knowingly obtained or used, or endeavored to use Acousti's labor and/or materials, with the intent to temporarily or permanently deprive Acousti of the right to such property, or the benefits of such property and appropriate such property to their own use, or the use of other persons or entities not entitled to the use of the property within the meaning of Fla. Stat. § 812.014.

192.  In its termination letter, Acousti demanded Defendant Velasco return all Acousti property and information.

193.  Defendant Velasco did not return any Acousti property.

194.  Acousti sent another letter to Defendant Velasco on February 22, 2023,

35

demanding Defendant Velasco be ordered to pay to Acousti treble damages.  True and correct copies of the demand letter is attached hereto as Exhibit 1.  Acousti served this demand letter to Defendant Velasco before filing this Complaint and Defendant Velasco would otherwise have thirty (30) days to respond to this claim.

195.   Pursuant to Fla. Stat. § 722.11, Acousti is entitled to bring an action for Civil Theft against Defendant Velasco for the above conduct.

196.   Pursuant to Fla. Stat. § 722.11, Acousti is entitled to recover from Defendant Velasco three times the value of the property stolen by Defendant Velasco.

197.   Acousti has suffered damages and will continue to suffer damages as a result of Defendant Velasco's intentional theft.  Acousti's damages include but are not limited to: (i) treble the sum of the value of the property stolen, and (ii) attorneys' fees and costs associated with the instant action.

## **PRAYER FOR RELIEF**

WHEREFORE, Acousti has a substantial likelihood of success on the merits of its claims and injunctive relief would serve the public interest, Acousti respectfully requests that the Court enter judgment against Defendant Velasco, Defendant Bautista, Defendant Palmer, Defendant Garner, Defendant VPG, and Defendant V3R:

1095455080\11\AMERICAS

1.    Enjoining Defendant Velasco from breaching his fiduciary duties and duty of loyalty to Acousti and misappropriating Acousti's trade secrets;

2.    Enjoining the Other Defendants from misappropriating Acousti's trade secrets;

3.    Directing all Defendants to return to Plaintiff any and all of Acousti's trade secrets in their custody and control;

4.    Requiring Defendant Velasco and the Other Defendants to return to Plaintiff any and all of Acousti's property and equipment in their custody and control, and if necessary, order the U.S. Marshall to seize Acousti's trade secrets from Defendants' property, computers, and other devices;

5.    Enjoining Defendant Velasco and the Other Defendants from using or disclosing information and/or data obtained from Acousti through unauthorized access to Acousti's computer systems in violation of the Computer Fraud and Abuse Act, as set forth in 18 U.S.C. § 1030(g);

6.    Enjoining Defendant Velasco from competing with Acousti, soliciting Acousti customers, soliciting Acousti employees, contractors or agents;

7.    Enjoining Defendant Velasco from disclosing confidential information, trade secrets, and other sensitive information;

8.    Enjoining Defendants from unfairly competing against Acousti;

9.    Requiring Defendants to provide Acousti with a full accounting of the

profits they obtained due to their wrongful conduct;

10.     Awarding Acousti ten million dollars ($10,000,000) as compensatory damages for Defendants' illegal acts, and awarding Acousti at least fifty million dollars ($50,000,000) as punitive and other damages for the violations outlined above;

11.     Awarding Acousti pre- and post-judgment interest;

12.     Awarding Acousti its attorneys' fees and costs; and

13.     Awarding Acousti all other relief to which it may be justly entitled.

## **DEMAND FOR TRIAL**

Plaintiff hereby demands a non-jury trial on all claims so triable.

Respectfully submitted this 9th day of March, 2023.

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Emily R. Binnie*
Emily R. Binnie
Florida State Bar No. 1033849
emily.binnie@squirepb.com
One Harbour Place
777 S. Harbour Island Blvd
Suite 420
Tampa, Florida 33602
Tel.: (813) 202 1300
Fax: (813) 202 1313

David W. Long-Daniels*
Georgia Bar No. 141916
david.long-daniels@squirepb.com
One Atlantic Center
1201 W. Peachtree Street, NW

38

Suite 3150
Atlanta, Georgia 30309
Tel.: (678) 272 3200
Fax: (678) 272 3211

*\* Motion for Special Admission forthcoming*

**Attorneys for Plaintiff Acousti Engineering**
**Company of Florida**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of March 2023 a copy of the foregoing
**PLAINTIFF ACOUSTI ENGINEERING COMPANY OF FLORIDA'S
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
AND DEMAND FOR TRIAL** was filed electronically with the Clerk of the United
States District Court for the Middle District of Florida using the CM/ECF system,
and that the same was served via the CM/ECF system to counsel of record, and hand
delivered to the following:

Carlos Velasco
2334 Roat Drive
Orlando, Florida 32835

Marbel Bautista
2334 Roat Drive
Orlando, Florida 32835

Joel Palmer
1273 Wellington Ter.
Maitland, Florida 32751

Bryan Garner
345 Kenzel Ct.
Merrit Island, Florida 32953

Marcos Ribeiro
9851 NW 75th Street
Doral, Florida 33178

VPG Builders LLC
c/o its Registered Agent

40

MTello Business Services Inc.
1801 E. Colonial Drive, Suite 206
Orlando, Florida 32803

V3R Construction LLC
c/o its Registered Agent
MTello Business Services Inc.
1801 E. Colonial Drive, Suite 206
Orlando, Florida 32803

*/s/ Emily R. Binnie*
Emily R. Binnie

**Counsel for Plaintiff Acousti Engineering
Company of Florida**

1095455080\11\AMERICAS